Robert N. Toomey Trucking Co., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 5, 1978, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Daniel L. Carn,* with him *Carn & Vaughn,* for petitioner.

*Susan Shinkman,* Assistant Attorney General, with her *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., June 22, 1978:

Petitioner appeals from an award by the Unemployment Compensation Board of Review (Board) granting the claim of claimant. The claim had been disallowed by the Bureau of Employment Security which action was reversed by the referee. We affirm the action of the Board granting the claim.

Claimant had been a truck driver employed by petitioner. He had been discharged. It is petitioner's position that he was discharged for willful misconduct. The willful misconduct charge was:

(a) Wilful violations of ICC safety rules after warning and refusal to acknowledge same.

(b) Criminal conviction detrimental to the employer.

(c) Blowing an engine on one of the employer's vehicles.

(d) Traveling off-route.

The petitioner offered evidence that did support these charges.

On the other hand, claimant offered evidence that his infractions of the ICC rules (driving excessive hours) were well known to petitioner and petitioner never objected. The criminal conviction was for having a radar detector in his cab. Claimant states that this too was well known to petitioner and that other of petitioner's drivers had them, including petitioner's son. With regard to driving off route, claimant testified that this could not be true since he was never given a route, merely a destination.

On the day claimant was discharged petitioner had offered him a statement to sign which said he would operate his truck "within legal scope of operations." Further, it contained other detailed instructions about the manner in which he would perform his duties. At the hearing the referee asked the claimant the following questions and received the answers indicated.

QR: Sir, now he [petitioner] has made a statement here that if you would have signed this document, you would still be working for the company.

AC: Yes, sir.

QR: Did you understand this?

AC: No, sir; I didn't. I gave testimony to the National Labor Relations Board on the 23rd of June. He found out about it the morning of the 24th. I was supposed to go out the 24th. I went in, and he said, 'No, you're not going out until tomorrow.' Okay, Friday I came in, and he said, 'Sign

this.' I said, 'Are the other drivers here signing one?' 'No, you're the only driver that has given me trouble. You're the only one that's given testimony to the National Labor Relations Board.' Now, we had the hearing at the National Labor Relations Board. He paid me 100% backpay. I don't know why he should pay me 100% backpay if I was so wrong, and he was so right.

The referee and the Board chose to believe the claimant. The referee and the Board could have either believed the testimony of the claimant or could have considered the allegations and denials as "stand offs." In either event, with the burden of showing willful misconduct on the employer, the decision of the Board must be affirmed.

Accordingly, we will enter the following

ORDER

AND Now, June 22, 1978, the order of the Unemployment Compensation Board of Review, Decision No. B-139487, dated January 11, 1977, is hereby affirmed.